## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

WYSAN RAHEEN LONGSTREET,

    Plaintiff,

    v.                              Civil Action No.:  SAG-20-918

MICHAEL BAILEY,
    *Correctional Dietary Manager*,

    Defendant.

## MEMORANDUM

In response to the above-captioned civil rights complaint, defendant Michael Bailey[1] filed a motion to dismiss or for summary judgment asserting in pertinent part that plaintiff did not exhaust administrative remedies before filing his complaint with this court.  ECF 19.  Plaintiff Wysan Raheen Longstreet, a prisoner who is currently confined in Roxbury Correctional Institution ("RCI") seeks default judgment and opposes the motion.  ECF 22; ECF 23.  No hearing is required to consider the pending matters.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons that follow the complaint must be dismissed without prejudice.

## BACKGROUND

Longstreet's complaint concerns injuries he sustained while working in the kitchen at Jessup Correctional Institution ("JCI") washing pots.   Defendant Michael Bailey is the Correctional Dietary Manager assigned to JCI.  Longstreet claims that on February 19, 2020, he verbally complained to Bailey about the condition of the pots, lids, sheet pans and strainers in the kitchen because they were chipped and split.  ECF 1 at 2.  He explained that the damaged cookware was slicing through the thin yellow rubber gloves provided to inmate workers and that he sustained

---

[1]    The Clerk will be directed to amend the docket to reflect defendant's full name.

lacerations to his fingers and hands.  *Id.*  He claims that Bailey dismissed his verbal complaint, so he filed an administrative remedy procedure complaint ("ARP") on February 22, 2020.  *Id.*  Additionally, Longstreet reported the matter by written complaint to the Maryland Department of Health on February 21, 2020.  *Id.*

In response to his complaint to the Department of Health, an inspection was conducted in February of 2020, which Longstreet characterizes as "mediocre."  ECF 1 at 3.  Longstreet reasons that if the inspection had been done properly, the inspector would have noticed the "deplorable and dangerous conditions of the pots, lids, sheet pans, and strainers" since they are "displayed less than ten feet from the kitchen's entrance."  *Id.*  He surmises that Bailey and "this institution" have somehow avoided a sanction that health inspectors are obligated to issue under similar circumstances.  *Id.*

After Longstreet lodged his complaints, he claims he was subjected to harassment by Bailey, Lt. Coldough, Officer Ashby, and Sgt. Johnson.  ECF 1 at 3.  He filed another ARP on March 14, 2020 regarding the harassment, and states that "[i]t is now March 23, 2020 and I have not received a response from Warden Allen Gang in regards to the hazardous conditions of the cookware and the pain I suffer through daily because of their decrepit state."  *Id.*

On March 9, 2020, Longstreet met with Bailey to discuss the harassment he was experiencing.  ECF 1 at 3-4.  During the meeting Longstreet showed Bailey a deep laceration on his right wrist and explained how it had been caused by the cookware he was required to wash.  *Id.* at 4.  Longstreet states that Bailey simply advised him to wear more than one pair of rubber gloves when washing the pots.  *Id.*

Longstreet additionally claims that "shards of metal" fall into pots of food that is served to inmates, correctional officers, other JCI staff members and visitors.  ECF 1 at 4.  He claims that

2

since he began working in the kitchen on January 15, 2020, he has discovered four shards of metal inside pots he was assigned to wash. *Id*. He describes three of the pieces of metal as being the "size of an adult's fingernail" and the fourth being approximately two inches long and one inch wide. *Id*. Longstreet filed the fourth piece of metal with the complaint filed with this court. ECF 1-1 at 2.

Longstreet lists the many dangers posed by the condition of the cookware, including use of the pieces of metal for weapons by the inmate population to assault others or to self-injure; contamination of food; and injury to kitchen workers forced to use the cookware. ECF 1 at 5-6. According to Longstreet, Bailey violated his constitutional rights by forcing him to work under hazardous and deadly conditions. *Id*. at 8. As relief he seeks an injunction ordering the use of the damaged cookware to cease; an investigation into the results of the Department of Health's inspection; declaratory relief; and monetary damages. *Id*. at 8-9.

Defendant asserts that while Longstreet filed an initial ARP with the Warden concerning the condition of the pots and pans at JCI, he does not indicate that he received a response from the Warden, nor does he state that he appealed such a response to the Commissioner of Correction or to the Inmate Grievance Office ("IGO"). ECF 19-1 at 8. As such, defendant asserts that this court does not have jurisdiction to consider his claims.[2]

Longstreet's initial response to defendant's motion asserts that the motion filed on defendant's behalf took 26 days to reach him and he suggests that this delay was intentional. ECF 22. He asks this court to consider his previously filed declaration in support of default judgment

---

[2]     To the extent that defendant asserts that Longstreet was required to "attach proof of exhaustion to his complaint" as required by Maryland State law (ECF 19-1 at 8), such a requirement does not apply to federal civil rights actions. Additionally, failure to exhaust administrative remedies does not deprive this court of jurisdiction. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc*., 407 F.2d 674, 682 (4th Cir. 2005) (administrative exhaustion under 28 U.S.C. § 1997e(a) is not jurisdictional and does not impose a heightened pleading requirement on the prisoner; it is an affirmative defense).

and suggests that defendant's motion was not timely filed with this court given the delay in his receipt of the motion. *Id.*, *see also* ECF 21. This court granted defendant's motion for extension of time to and including December 16, 2020. ECF 18. Defendant's motion was filed with this court on December 14, 2020. ECF 19. The delay in Longstreet receiving a copy of the motion does not support a finding of default[3] and such a delay is a common occurrence. Mail delivery through the United States Postal Service has been slow due to backlogs, increased volume, and decreased personnel, some of which is attributable to the pandemic. Longstreet's request for default judgment is denied.

In a subsequent pleading, Longstreet claims his multiple ARPs filed regarding Bailey's conduct were mishandled by the Administrative Remedy Coordinator at JCI. ECF 23 at 2. He states that he "was unable to file an appeal with IGO because the corrupt staff within JCI continued to lie to me by stating how there wasn't any ARP appeal forms in the lieutenant's office." *Id.* He also states that he submitted an IGO appeal in December of 2020 regarding his initial complaint against Bailey. *Id.* at 3. Longstreet's complaint file with this court is dated March 23, 2020. ECF 1 at 9.

## STANDARD OF REVIEW

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

---

[3] Under Fed. R. Civ. Proc. 55(a) default may be entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." The failure to plead or defend does not automatically entitle a plaintiff to entry of default judgment. The decision to enter default is left to the discretion of this Court. *See Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002). Entry of default judgment is not favored and is reserved in cases where the adversary process has been halted by an unresponsive party. *See United States v. Shaffer Equip. Co.*, 11 F. 3d 450, 453 (4th Cir. 1993). Defendant has not been unresponsive, nor has the adversary process been halted.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## ANALYSIS

As noted, Bailey raises the affirmative defense that Longstreet failed to exhaust administrative remedies prior to filing this lawsuit. ECF 19-1. A claim that has not been properly presented through the administrative remedy procedure must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison,

5

> or other correctional facility until such administrative remedies as are available
> are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford,* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aguilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution."  *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP).  The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction."  C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement."  COMAR 12.07.01.01(B)(7).  "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth in C.S. Title 10, Subtitle 2.  C.S. § 10-210(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee.  C.S. § 10-206(a).  However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO.  *See* C.S. § 10-206(b).  There is an established administrative remedy procedure process that applies to all Maryland prisons.  COMAR 12.07.01.05B 2.28.01.  Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps.  For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" COMAR 12.02.28.02(D)(1), which is

7

defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility."  Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.  COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame.  The prisoner has 30 days to file an appeal to the Commissioner of Correction.  COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[4]   COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response.  COMAR 12.07.01.04(B)(9)(a).  If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing."  C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.S. § 10-208; COMAR 12.07.01.07-.08.  The conduct of such hearings is governed by statute.  *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1)

---

[4]      If the Commissioner fails to respond, the grievant shall file their appeal within 30 days of the date the response was due.  COMAR 12.07.01.05(B)(2).

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* COMAR 12.07.01.10(B); C.S. § 10-209(b)(2)(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. An inmate need not, however, seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F.Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never

sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo* 286 F.3d at 1024  (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Importantly, exhaustion of administrative remedies after a complaint is filed with this court will not save a case from dismissal for failure to exhaust administrative remedies.  *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds).  In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."  Here, it is beyond question that Longstreet filed his complaint with this court before exhausting administrative remedies, thereby thwarting the purpose of the PLRA exhaustion requirement.  His assertions that prison staff lied to him about the availability of appeal forms after this lawsuit was already pending does not excuse his failure to exhaust administrative remedies properly. Accordingly, the complaint must be dismissed without prejudice by separate order which follows.


<u>February 18, 2021</u>                          _____/s/_____
Date                                              Stephanie A. Gallagher
                                                  United States District Judge